# NO. 12-07-00324-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SUSANA REYES SOLANO,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Susana Reyes Solano appeals her conviction for injury to a child. In two issues, Appellant argues that she was denied her right to a speedy trial and that the trial court should have granted her motion to dismiss due to delay in bringing the indictment. We affirm.

### BACKGROUND

Appellant was arrested on October 12, 2004 for injuring her child the previous month. She bonded out the next day, and a Smith County grand jury indicted her for the felony offense of injury to a child in July 2005. The trial was delayed because both sides filed motions for continuances and because the trial court's calendar was congested due to a capital murder case. The trial court called the case for trial in April 2006. The State filed a motion to continue that trial and a motion to dismiss the indictment. With respect to the motion to dismiss, the State represented orally that it needed to "talk to mainly one issue [sic]. The State may be able to pursue another indictment to add [sic]. That is – – that was based on some of the information within the case file, so it would not be limited to the act of the Defendant by maybe by her omission." The trial court did not rule on the State's motion to continue, but granted the motion to dismiss.

In November 2006, another Smith County grand jury indicted Appellant for the same offense. A series of scheduling issues arose, and the matter was set for trial in August 2007. In July 2007, Appellant filed a motion to dismiss alleging that the delays violated her constitutional rights. The trial court held a hearing on July 27, 2007 and denied the motion before trial. The trial began on August 6, 2007. The jury convicted Appellant as charged and assessed punishment at imprisonment for fifteen years. This appeal followed.

## SPEEDY TRIAL

In her first issue, Appellant argues that the trial court should have dismissed the indictment because her constitutional right to a speedy trial was violated.

### Applicable Law

The Sixth Amendment to the United States Constitution guarantees the accused the right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 2193, 33 L. Ed. 2d 101 (1972)); *see also Dickey v. Florida*, 398 U.S. 30, 37, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970). A claim of a violation of the right to speedy trial is evaluated using a nonexclusive four part balancing test from *Barker*. *See Shaw v. State*, 117 S.W.3d 883, 888–89 (Tex. Crim. App. 2003). The four *Barker* factors are the length of the delay, the reason for the delay, the defendant's assertion of her speedy trial right, and the prejudice to the defendant resulting from the delay. *Id.*

We review the factual components of a trial court's ruling on an appellant's federal constitutional speedy trial claim for an abuse of discretion, and we review the legal components of the ruling de novo. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Application of the balancing test is a "purely legal question." *See Cantu*, 252 S.W.3d at 282.

### Analysis

We begin by considering the length of the delay. *See Cantu*, 253 S.W.3d at 281. The parties disagree on how to measure the length of the delay. Appellant asserts that the relevant measurement is from the time of the original indictment to the trial, a period of about two years. Appellant cites *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 474–75, 30 L. Ed. 2d 468 (1971), for the proposition that the starting point for measuring the delay is the date of arrest or formal accusation,

2

but argues that the date of the first indictment is the appropriate starting point.

Citing **Brown v. State**, 163 S.W.3d 818 (Tex. App.–Dallas 2005, pet. ref'd), the State argues that the starting point for measuring the delay is the date of the second indictment, that is November 2006, and that the delay is approximately eight months. The trial court did not state which period it considered for its analysis. The general rule when a case is dismissed and a subsequent indictment is obtained is to disregard, for speedy trial purposes, the time between the dismissal and reindictment if the dismissal is in good faith. *See **United States v. MacDonald***, 456 U.S. 1, 6–7, 102 S. Ct. 1497, 1501, 71 L. Ed. 2d 696 (1982); **Deeb v. State**, 815 S.W.2d 692, 705 (Tex. Crim. App. 1991); **Griffith v. State**, 976 S.W.2d 686, 692 (Tex. App.–Tyler 1997, no pet.). Examples of good faith dismissals include cases where the government needed to do additional investigation. *See **Deeb***, 815 S.W.2d at 705. The trial court appears to have found that the dismissal was not in good faith and that the State dismissed because it was not ready for trial. The court also noted that there was "no evidence of any further investigation in the case."

Using Appellant's beginning point of the first indictment, the delay is either from July 2005 to April 2006 and from November 2006 to August 2007, if the time between indictments is not counted, or from July 2005 to August 2007 if it is counted. These periods of approximately sixteen months or approximately two years are long enough to trigger further speedy trial analysis. *See **Harris v. State***, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (delay of thirteen months is prima facie unreasonable); *see also **Cantu***, 253 S.W.3d at 281 (delay of seventeen months is sufficient to trigger further analysis).

The second factor is the reason for the delay. *See **Shaw***, 117 S.W.3d at 889. The State bears the burden of showing the reason for the delay. ***Id.*** The reasons for delays count more or less heavily against the government depending on the cause of the delay. A "deliberate attempt to delay the trial" should be weighed heavily against the government. ***Barker***, 407 U.S. at 531, 92 S. Ct. at 2192. A "more neutral reason such as negligence or overcrowded courts should be weighed [against the government] less heavily." ***Id.*** A valid reason for the delay should not be weighed against the government at all. ***Id.*** And delay that is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim. ***Id.***, 407 U.S. at 528–30, 92 S. Ct. at 2191–92.

Appellant is responsible for some of the delay. Appellant filed for two continuances in the

first indicted case, accounting for about three months of delay, from October 2005 to January 2006. Furthermore, Appellant filed for and received a continuance in the second indicted case, although it appears this resulted in a delay of only about a month. The State filed a continuance in the first case, but it is not clear that Appellant opposed that motion. The two biggest remaining delays were caused by congestion in the trial court's calendar in the first indicted case because of a capital murder trial and delay caused by the second indicted case having been filed in the wrong district court.

Congestion of the calendar counts against the State, although with less weight than other reasons for delay. *See **Barker***, 407 U.S. at 531, 92 S. Ct. at 2192; ***Shaw***, 117 S.W.3d at 890. The other delay was a result of the second indicted case not being returned to the original trial court. This was apparently a mistake. Cases in Smith County are assigned to a district court based on the week the defendant is arrested. The trial court judge explained that reindicted cases are returned to the court in which the first indictment was filed to prevent forum shopping. This was not done. Instead, the second indicted case was filed in another district court, and it was not returned to the original district court until it reached a position on the docket where it was ready for trial. This period of delay was from November 2006 to April 2007. There is no evidence that this delay was intentional, and so it counts against the State less heavily. *See **Cantu***, 253 S.W.3d at 279 n.7.[1] Finally, there is the delay due to the dismissal of the first indictment, which the trial court found was done to delay the trial.

The trial court characterized the length of the delay as "enormous" and was not persuaded that a justification for the delay was offered. These conclusions are supported by the record, and the trial court properly weighed the lack of justification for most of the delay against the State.

The third factor is the defendant's assertion of her right to a speedy trial. ***Shaw***, 117 S.W.3d at 890. In this case, Appellant was tried very quickly after her assertion of her right. She filed her motion to dismiss in July 2007 and was tried in August 2007. This is a relatively short period of time. Appellant argues that she asserted her right to a speedy trial by opposing the dismissal of the original indictment. We disagree. Appellant did oppose a continuance, but she did not specifically assert her right to a speedy trial at that time, and she did not file a motion for a speedy trial until the

---

[1] Appellant was on inquiry notice of the local rule about assignment of cases, but the policy of returning cases to their original court appears to be unwritten.

4

second indicted case had been pending for seven months. The trial court found that Appellant had not asserted her right to a speedy trial, and that conclusion is supported by the record. The factor weighs against Appellant's claim.

The fourth factor is prejudice to the defendant. ***Barker***, 407 U.S. at 532, 92 S. Ct. at 2193. Prejudice may come in the form of pretrial incarceration, anxiety or concern, or an actual impairment of the defense. ***Id.*** Appellant concedes that she was not incarcerated prior to trial. With respect to the anxiety and concern subfactor, Appellant argues that she was denied access to her son, who was the victim of the offense, as a result of the delay. However, part of the reason for this is because Appellant made a decision not to go forward with a pending civil action to return her child to her because of the pending criminal case. That might have been a wise decision, but it suggests that the anxiety and concern were not so arduous that she was unable to make strategic decisions. The trial court observed Appellant testify about her anxiety and was not persuaded that the delay caused her acute anxiety.[2] The trial court could have reasonably found that the anxiety and concern factor did not weigh heavily in Appellant's favor, if at all.

Finally, there is the subfactor of impairment of Appellant's defense. A woman and her husband were Appellant's neighbors, and their home was quite close to Appellant's home. According to Appellant's testimony, the woman could have testified that Appellant was a good mother. Appellant's trial counsel testified that the husband could have provided testimony that Appellant was a good mother, that the child had not been crying prior to the injury, and that the neighbors did not hear Appellant yelling or making a lot of noise around the time the child was injured. Appellant's counsel said that the testimony about the baby crying and noise surrounding the assault could be important because, in his experience, those facts often appeared in cases where children were alleged to have been assaulted. The woman died near the end of 2005, before the first indictment was returned. Her eighty-six year old husband, according to counsel's testimony, had diminished as a witness during the pendency of the case.

The trial court considered the evidence Appellant presented about these witnesses and

---

[2] The trial court differentiated between anxiety suffered by a hypothetical guilty person as opposed to the anxiety of a not guilty person. Whether pretrial anxiety causes prejudice does not depend on whether the person is guilty of the offense, but the trial court observed Appellant and did not conclude that she had showed anxiety.

determined that Appellant's defense was not negatively affected. This is essentially a fact based determination. The trial court did allow that it would consider permitting Appellant to present evidence about the delay and the problems with witnesses if the appropriate situation presented itself. Appellant did not accept the trial court's offer, and whatever noise there was at the time of the assault was not an important issue in the trial. Instead, Appellant's defense was that she did not cause the injury or that the injury occurred when she fell with the child.

In conclusion, we hold that the trial court did not err. The delay is long, sixteen months or twenty-four months, either of which is long enough for further inquiry. The reasons for the delay include continuances by the parties and the case having been assigned to the wrong court. But, the State did not fully justify the delays, and this factor weighs in Appellant's favor. The time from Appellant's assertion of the right to trial was quite short, and the trial court's finding that Appellant's defense did not suffer from the loss of the two witnesses is supported by the record and is not an abuse of discretion. The right to a speedy trial does not offer protection against the simple passage of time, but serves as "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *Marion*, 404 U.S. at 320, 92 S. Ct. at 463. Appellant was not incarcerated prior to trial, the trial court did not find that her anxiety was high, and the trial court did not find that her defense was impaired. Accordingly, the trial court did not err in holding that Appellant was not denied her right to a speedy trial.[3] We overrule Appellant's first issue.

## DUE PROCESS

In her second issue, Appellant argues that her right to due process was violated by the length of time it took the State to obtain the indictments. The Due Process Clause of the Fifth Amendment to the United States Constitution requires dismissal of an indictment if it is shown at trial that preindictment delay caused substantial prejudice to a defendant's right to a fair trial and that the delay was an intentional device to gain a tactical advantage over the accused. *Marion*, 404 U.S. at

---

[3] In *Marion*, when considering a related due process claim, the Court stated that events at the trial may demonstrate actual prejudice. *Marion*, 404 U.S. at 326, 92 S. Ct. at 482. Appellant does not raise any argument based on the events at the trial.

324, 92 S. Ct. at 465; **Spence v. State**, 795 S.W.2d 743, 749 (Tex. Crim. App. 1990). This requirement is like the speedy trial requirement of the Sixth Amendment. However, the protection afforded is narrower, and the right to due process is violated only if the preindictment delay violates the "fundamental conceptions of justice which lie at the base of our civil and political institutions." *See* **United States v. Lovasco**, 431 U.S. 783, 791, 97 S. Ct. 2044, 2049, 52 L. Ed. 2d 752 (1977).

There were two periods of preindictment delay–approximately nine months from arrest to the first indictment, and approximately six months from the dismissal of the first indictment to the return of the second. However, Appellant cannot show that the delay caused substantial prejudice to her right to a fair trial. Appellant's primary allegation of prejudice is that she lost her neighbors as witnesses because of the preindictment delay. However, one of the witnesses died within months of the offense, making it unlikely that she could have been a witness even if Appellant had been indicted at the first opportunity. More importantly, the trial court found that the loss of the neighbors' testimony did not prejudice Appellant's right to a fair trial.[4] For reasons explained in our discussion of Appellant's first issue, this conclusion is supported by the record. Accordingly, we hold that the trial court properly found that Appellant's due process rights were not violated by the delays in bringing indictments.[5] We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant two issues, we ***affirm*** the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered January 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[4] Appellant also argues that the delay extended the period of time she did not have access to her child. Appellant does not provide any authority for the proposition that this is the kind of substantial prejudice against which the Due Process Clause offers protection.

[5] The trial court did find that the State dismissed the first indictment for "purely tactical reasons." The State denies this. The court was persuaded that the State was unprepared for trial and dismissed the first indictment rather than go to trial without its expert witnesses. However, the dismissal was not used by the State for the purpose of damaging Appellant's case. *See* **United States v. Crouch**, 84 F.3d 1497, 1514 n.23 (5th Cir. Tex. 1996) (en banc) (differentiating between delay to deny the defense evidence and delay to affirmatively strengthen the government's case).

7